FRANKIE M. SCHMIDT, Appellant, v. C. P. MEREDITH, Appellee.

No. 39899.

*Swan, Martin & Martin,* for appellant.

*Dalton & Knop, Owen Meredith,* and *C. A. Meredith,* for appellee.

KINDIG, J.—The plaintiff-appellant in this law action seeks to recover from the defendant-appellee what are termed "the actual damages which were the proximate and natural result of an injunction." Said injunction was issued as an auxiliary remedy in the case of *Meredith v. Schmidt,* 205 Iowa 841. In that case the principal relief sought was a judgment and decree of court declaring a certain note and mortgage to be the property of one Frank A. Schmidt, the father of the appellant, Frankie. This result was desired by the appellee, who was the plaintiff in said suit, in order that he, a creditor of Frank's, might levy execution thereon. As a precaution, to assure the results of the contemplated victory, a temporary injunction was obtained, as an aid to the main suit. For the purpose of the temporary injunction, a bond was given by the plaintiff in the cited case, who, as before suggested, is the defendant and appellee here.

No motion was made to dissolve the temporary injunction in the above-named case, but all effort apparently was directed on the main issue. Appellant, as the defendant, won in the cited case on the proposition involving her title to the note and mortgage, and, as a consequence thereof, the temporary injunction, being auxiliary, was dissolved.

Thereafter, on March 31, 1928, the present suit was instituted, to recover on the injunction bond the sum of $750, with interest and costs, which represents the deficiency judgment against the maker of said note and mortgage after the fore-

closure thereof. Basis therefor, as claimed by the appellant, may rest in either one of two theories advocated by her: First, "the difference in the value of the property on which the mortgage was held;" or, second, "the difference in the value of the mortgage before the injunction was issued and after it was removed by the court." Such is appellant's contention here.

Appellee, in support of the judgment obtained by him in the district court, insists that, under the record, appellant proved no damages which proximately resulted from the injunction.

I. Generally speaking, there are two classifications of damages accruing from a wrongful injunction. These, in the broader sense, are: First, the expenditures made in obtaining the dissolution thereof, including attorney fees, etc.; and second, the loss resulting from the injunction itself. If the injunction is the sole remedy, then the costs and expenses incurred in dissolving the same may be recovered. *Bullard v. Harkness*, 83 Iowa 373; *Colby v. Meservey*, 85 Iowa 555; *Williams v. Ballinger*, 125 Iowa 410; *Weierhauser v. Cole & Johnson*, 132 Iowa 14. A quotation from *Bullard v. Harkness* (83 Iowa 373), supra, will indicate the trend of thought expressed in the authorities cited:

"It is only such expenditures as were necessarily incurred in defending against the injunction that are recoverable on the bond, and expenses incurred in defending against other features of the case in which the injunction was issued are not included. When an injunction is the only relief sought, and dissolution is procured on final hearing, necessary costs and expenses in procuring the dissolution are recoverable."

Whether, in any event, when an injunction is auxiliary, the expenses in obtaining a dissolution thereof could be so separate and distinct from a defense of the main issues as to authorize the taxing of the same as damages, we do not now decide. Before us is a case where a temporary injunction was a mere auxiliary remedy, and no attempt has been made to separate the costs of dissolving the same from the expenses incurred in defending the main case. That main defense apparently absorbed appellant's entire attention, and she was willing to permit the temporary injunction to abide the result of the principal action. While, in her original pleadings, the appellant sought

attorneys fees and other expenses in this regard, she abandoned the same by later amendments. Hence, references thereto in the arguments and authorities cited become immaterial, under the circumstances.

II. Is the appellant entitled to recover damages because of the temporary injunction, under the facts presented in this record? We think not. Contained in appellee's application for the injunction is the allegation that, unless prevented, the appellant would "pledge, sell, or otherwise dispose of the mortgage" and note. To meet that issue and avoid the injunction, the appellant in her answer denied that she intended to or would "dispose of, sell, or pledge such mortgage" and note.

It is to be noted that the injunction did not restrain appellant from collecting the interest or principal on the note, nor did it prevent her from foreclosing the mortgage. Consequently, if appellant, in no event, as she pleaded, would have pledged, sold, or otherwise disposed of the note and mortgage, then the injunction did her no harm; for under it she had the right to collect both principal and interest, and, if necessary, foreclose the mortgage. Under those circumstances, the writ of injunction did not interfere with any lawful or substantial right possessed by appellant, except the privilege of pledging, selling, or otherwise disposing; but in view of the fact that she did not intend or want to exercise the latter right, the injunction caused no damages, under this record. As before indicated, this proceeding does not involve the expense of removing the obstruction preventing appellant from pledging, selling, or disposing of the note and mortgage. Therefore, the only damages, if any involved, relate to the loss arising through the existence of the injunction, independent of the costs which otherwise might have been incident to bringing about a dissolution thereof. Damages caused by the injunction herein cannot embrace the depreciation of either the mortgaged land or the note and mortgage themselves.

The conclusion is thus reached because appellant in her answer, as before explained, said she had no intention to, and would not, pledge, sell, or otherwise dispose of these written instruments. Resultantly, loss through decline in the real estate, on the one hand, and the note and mortgage, on the other, would have occurred, regardless of the injunction: that is to say, ap-

pellant would have retained the note and mortgage, regardless of the injunction. So, whatever vicissitudes befell the note and mortgage under the injunction likewise would have affected them without the restraining order. Upon this subject, we said in *Bank of Monroe v. Gifford*, 70 Iowa 580:

"The condition of the bond sued on is that defendants will pay all damages which plaintiffs may sustain by reason of the issuance of the writ. Plaintiffs could be damaged by the injunction only in case they were prevented by it from exercising or enjoying some right or privilege which they desired and were entitled to enjoy. If they were left by it in the same position, with reference to the subject of the controversy, which they intended to occupy if the writ had not been issued, they clearly were not damaged by it, however wrongful it may have been; and it appears to us that by their own showing they were left in precisely that position. * * * Defendants, by their denial of the allegation that they were about to negotiate the note, showed to the judge that the continuance of the injunction was not essential to the preservation of any right which might accrue to defendant under the final judgment. By that denial they placed themselves in the position of insisting that they were not about to negotiate the note, and had no intention of doing that act; but, if that was true, how could they be damaged by the writ? It simply restrained them from doing an act which they say they did not desire to do, and had no intention of doing. * * * By their own showing, then, plaintiffs were not damaged by the writ. They were not prevented by it from exercising or enjoying any right which they intended or desired to enjoy. The continuance of the writ would not have been injurious to them, and by its dissolution they gained no benefit or advantage."

Likewise, the same general thought is expressed in *Chicago, A. & N. R. Co. v. Whitney*, 152 Iowa 520, reading on page 523:

"If the injunction had been dissolved at any time before final hearing, the company would have been in no better condition than it was in reality in, because in that event no money was due it from the treasurer. * * * It is therefore apparent that the writ caused no damage to the railway company, nor did it interfere with any lawful or substantial right; and to

recover on the bond it must be shown that it was damaged to some extent by the issuance of the writ * * *.''

Again, the principle was recognized in *Western Fruit & Candy Co. v. McFarland,* 188 Iowa 204, wherein we declared:

''In *Bank of Monroe v. Gifford,* 70 Iowa 580, we held that, if defendant concedes he does not intend to do the act enjoined, he thereby concedes that the writ has not damaged him, and that he would not be damaged by its continuance to a final hearing * * *.''

Obviously, then, the appellant has not shown herself to have been damaged in any way by the temporary injunction. Because thereof, there is no occasion to enter upon the discussion relating to the measure of damages.

Wherefore, the judgment of the district court should be, and hereby is, affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, ALBERT, and GRIMM, JJ., concur.